UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-831-BR

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
Plaintiff,
v.
KB HOME, KB HOME RALEIGH-DURHAM, INC., and STOCK BUILDING SUPPLY, LLC,
Defendants.

ORDER

This matter is before the court on the motion for judgment on the pleadings, (DE # 30), filed by defendants KB Home and KB Home Raleigh-Durham, Inc. (collectively "KB"). Also before the court is plaintiff Liberty Mutual Fire Insurance Company's ("Liberty") cross-motion for judgment on the pleadings. (DE # 39.) The motions are now ripe for adjudication.

## I. BACKGROUND

The instant dispute concerns two commercial general liability insurance policies Liberty issued to KB Home Raleigh-Durham, Inc.'s subcontractor, defendant Stock Building Supply, LLC[1] ("Stock"), in 2005 and 2006 and settlement of a lawsuit concerning those policies. KB was named as an additional insured under the 2005 policy. (Aff., DE # 3-1, at 11-12.) KB alleges that it was also listed as an additional insured under the 2006 policy. (Answer, DE # 26, at ¶ 8.) The policies each provide that Liberty has a duty to defend the insured against any suit seeking damages to which the insurance applies. (Am. Compl., DE # 13, ¶ 19.) Under the

[1] Although Stock was purportedly served with process on 21 June 2013, (DE # 15), it has not made any appearance in this action.

policies, Liberty's duty to defend terminates upon the exhaustion of the applicable limit of insurance in the payment of judgments or settlement of covered damages. (Id.)

On or about 5 December 2008, a group of North Carolina homeowners filed a lawsuit against KB in Wake County Superior Court, North Carolina, alleging that their homes had suffered water damage resulting from improper home construction, *Mark Elliott, et al. v. KB Home North Carolina, Inc. and KB Home Raleigh-Durham, Inc.*, Case No. 08-CVS-21190. (Id. ¶ 14.) KB subsequently filed a declaratory judgment action against Liberty in the same state court (which was later removed to this court, Case No. 5:10-CV-573), seeking defense as an additional insured under the policies. (Id. ¶ 16; Answer, DE # 26, ¶ 10.) On 28 February 2012, KB and Liberty reached a settlement regarding that declaratory judgment action and Liberty's defense obligations and entered the "Settlement Agreement" and the "Elliot Defense Cost Agreement" ("Defense Agreement"). (See DE ## 26-1, 26-2.)

Pursuant to the Settlement Agreement, Liberty agreed to reimburse KB for past defense costs arising from the Elliott suit and incurred through 30 November 2011. (DE # 26-1, at 1.) Further, the parties agreed:

> that based on the presently pending pleadings, [Liberty] is obligated to defend KB Home and to pay KB Home's on-going defense fees and costs until such time that the Elliott Action is resolved by settlement(s), verdict(s), or judgment(s) through trial, or until such time as [Liberty] brings a declaratory action seeking a court's determination regarding coverage of the claim ("[Liberty's] On-Going Defense Obligations").

(Id.) The Settlement Agreement goes on to state that "[Liberty's] On-Going Defense Obligations are set forth more fully in the Defense Agreement attached hereto as Exhibit 'B.'" (Id. at 2.)

The Settlement Agreement also contains a detailed reservation of rights provision. Namely, the reservation of rights excepts from the Settlement Agreement "[Liberty's] On-Going

Defense Obligations to KB Home under the Policies and the Defense Agreement." (Id.) In addition, Liberty reserved its right "to institute a declaratory judgment action to determine whether [Liberty] may be permitted to withdraw from the defense of the Elliott Action should [Liberty] determine that the claim is not covered under the Policies." (Id.) The reservation of rights further specifies that the Settlement Agreement and the Defense Agreement "are intended to apply solely to the defense obligation of [Liberty] and are limited to the issue of defense." (Id.) It excepts all rights and claims relating to Liberty's duty to indemnify. (Id.)

The Defense Agreement obligates Liberty to pay KB's defense costs in the Elliott action "from December 1, 2011 until the matter is resolved by settlement, verdict, or judgment, subject to paragraph 2(h) below ('Defense Obligation')." (DE # 26-2, at 1.) Paragraph 2(h) of the Defense Agreement provides as follows:

> Notwithstanding the foregoing, [Liberty] reserves all rights to institute a declaratory judgment action to determine whether [Liberty] may be permitted to withdraw from the defense of the Elliott Action should plaintiffs in the Elliott Action assert a claim for mold damages. [Liberty] also reserves all rights to withdraw from the defense of the Elliott Action if plaintiffs amend their complaint to allege damages not covered by the Policies.

(Id. at 2.) The agreement states that it is intended to "apply solely to the defense obligation of [Liberty]" and reserves the parties' rights regarding Liberty's duty to indemnify. (Id. at 1.) The final provision of the Defense Agreement is an integration clause stating, in pertinent part, "This Defense Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof." (Id. at 3.)

After the execution of the agreements, Liberty paid the ongoing defense costs incurred by KB in the Elliott action until 9 May 2013. (Answer, DE # 26, ¶ 62.) At that time, Liberty informed KB that it was stopping payment because the policy limits had been exhausted as a

result of payment of other claims. (Id.; Reply, DE # 29, ¶ 62.)

On 14 June 2013, Liberty filed the instant complaint in the United States District Court for the Eastern District of Virginia, seeking declaratory judgment that it is not required to defend (or pay defense costs) to KB in connection with the Elliott action and that it has "fully discharged" its defense obligations "pursuant to the Settlement Agreement and/or Defense Cost Agreement." (DE # 1, at 6.) On 11 July 2013, KB filed a motion to dismiss, or in the alternative, to transfer venue. (DE # 3.) Liberty responded by requesting that KB's motion be denied or, in the alternative, that Liberty be granted leave to amend its complaint. (DE # 7.) On 22 October 2013, the court granted Liberty leave to amend its complaint to further allege facts regarding subject matter jurisdiction. (DE # 12.) Liberty filed an amended complaint for declaratory judgment on 5 November 2013, setting forth allegations pertinent to subject matter jurisdiction but not altering the substance of its initial declaratory judgment claim. (DE # 13.) By memorandum opinion and order entered on 25 November 2013, this matter was transferred to this court. (DE # 16.)

On 8 January 2014, KB filed an answer and asserts the following counterclaims against Liberty: (1) breach of insurance contract; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unfair and deceptive trade practices; and (5) declaratory judgment. (DE # 26.) Copies of the Settlement Agreement and the Defense Agreement were attached to KB's answer and counterclaim. (DE ## 26-1, 26-2.) On 7 March 2014, KB filed a motion for judgment on the pleadings as to its declaratory judgment claim. (DE # 30.) On 21 April 2014, Liberty filed its cross-motion for judgment on the pleadings. (DE # 39.) These motions are now before the court.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard of review as a Rule 12(b)(6) motion to dismiss. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Under this standard, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the c[laims]." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 680). However, the court "need not accept legal conclusions drawn from the facts as true" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

In determining a motion for judgment on the pleadings, the court may consider documents attached to the pleadings, "so long as they are integral to the [pleadings] and authentic." Phillips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). The court may also review any document incorporated by reference in one of the pleadings. A document is incorporated by reference if it is "in a pleading . . . adopted by reference elsewhere in the same pleading or in any other pleading." Fed. R. Civ. P. 10(c).

**B. Analysis**

Liberty moves for a judgment declaring that under the terms of the Settlement Agreement and the Defense Agreement, it owes no further defense obligation to KB.[2] KB moves for judgment on the pleadings only as to its fifth counterclaim which, like Liberty, seeks declaratory judgment to determine whether Liberty is obligated to continue to defend KB under the terms of the Settlement Agreement and the Defense Agreement. The parties agree that the court can consider the Settlement Agreement and the Defense Agreement, both of which were referred to and attached to the pleadings, in determining the motions.

"[The North Carolina] Supreme Court has stated that a mediated settlement agreement constitutes a valid contract between the settling parties which is 'governed by general principles of contract law.'" McClure Lumber Co. v. Helmsman Const., Inc., 585 S.E.2d 234, 238 (N.C. Ct. App. 2003) (quoting Chappell v. Roth, 548 S.E.2d 499, 500 (N.C. 2001)). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." North Carolina v. Philip Morris USA Inc., 618 S.E.2d 219, 225 (N.C. 2005) (citations and internal quotation marks omitted). "When the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are bound by its terms." Telerent Leasing Corp. v. Boaziz, 686 S.E.2d 520, 522 (N.C. Ct. App. 2009) (quoting Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co., 594 S.E.2d 425, 429 (N.C. Ct. App. 2004)).

---

[2]According to Liberty, "[s]uch conclusion would leave for determination by the Court at a later time the remaining issues raised by the pleadings in this action, *i.e.*, [Liberty's] continuing duty to defend under the *language of the Policies* after exhaustion of the policy limits, and the other issues raised by KB's Counterclaim concerning whether [Liberty] breached any contractual or extra-contractual duties owed to KB." (Mem., DE # 40, at 9.)

The parties do not dispute that the terms of the Settlement Agreement and the Defense Agreement are clear and unambiguous. The principal issue in dispute is whether Liberty's defense obligation terminated upon its filing of this declaratory judgment action.

KB contends that, by virtue of the plain language in the Settlement Agreement and the Defense Agreement, the Defense Agreement alone controls Liberty's ongoing defense obligations. Therefore, KB argues, because there is no allegation that the Elliott action has been resolved nor any allegation that the Elliot action plaintiffs have asserted a claim for mold damages or amended their complaint to allege non-covered damages, Liberty's declaratory judgment claims must fail.

Liberty argues that the Settlement Agreement and Defense Agreement should be construed together as one agreement because they were executed at the same time as a part of the same transaction. It contends that its defense obligation ends when the Elliott action is resolved by "settlement, verdict, or judgment," as well upon Liberty's filing of a declaratory action seeking a court's determination of its defense obligations should "(1) [Liberty] determine[] that the claim against KB is not covered under the Policies; (2) the plaintiffs in the Elliott Action assert a claim for mold damages; [or] (3) [the] plaintiffs in the Elliott Action amend their complaint to allege damages not covered by the Policies." (Mem., DE # 40, at 15.) Liberty further contends that KB's interpretation is unreasonable because it nullifies this language in the Settlement Agreement and ignores the limits set forth in the insurance policies.

Looking at its plain language, the Defense Agreement comprehensively deals with Liberty's defense obligations from 1 December 2011 forward, detailing the selection of counsel as well as billing details, without reference to the Settlement Agreement. There is no indication

that the terms of the Defense Agreement were not extensively negotiated between counsel for the parties. The parties excluded and reserved a number of rights from the Defense Agreement. The parties could have elected to include a provision reserving certain rights and claims relating to Liberty's defense obligations under the policies and/or the Settlement Agreement. The fact that they did not supports the conclusion that the Defense Agreement alone controls Liberty's future defense obligations.

Furthermore, the court considers the integration clause contained in the Defense Agreement. "North Carolina recognizes the validity of integration and merger clauses and has consistently upheld them." Zinn v. Walker, 361 S.E.2d 314, 318 (N.C. Ct. App. 1987) (citations omitted). The existence of a merger clause "create[s] a rebuttable presumption that the writing represents the final agreement between the parties." Id. "Generally, in order to effectively rebut the presumption, the claimant must establish the existence of fraud, bad faith, unconscionability, negligent omission or mistake in fact." Id. (citation omitted). The one exception to the general rule is where giving effect to the merger clause would "frustrate and distort the parties' true intentions and understanding regarding the contract." Id.

It is true that "'separate contracts relating to the same subject matter and executed simultaneously by the same parties may be construed as one agreement,' and this is true even where one contract states that there are no other agreements between the parties." Id. at 319 (quoting 3 *Corbin on Contracts* § 578 at 648 (1960 & Supp. 1984)). However, that is not the case here. Although the Settlement Agreement and the Defense Agreement were executed simultaneously, the two agreements were intended to govern different aspects of the overall settlement. The Settlement Agreement was intended to address Liberty's past defense obligations

in the Elliott case and resolution of the then-pending declaratory judgment action in this court. The Defense Agreement, as evidenced by the inclusion of the integration clause, was intended to address Liberty's defense obligations from 1 December 2011 onward. As noted previously, the integration clause explicitly states, "This Defense Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof." (DE # 26-2, at 3.) The inclusion of this clause "create[s] a rebuttable presumption that [the Defense Agreement] represents the final agreement between the parties." See Zinn, 361 S.E.2d at 318. Liberty comes forward with nothing to suggest that this presumption should be rebutted. Thus, the court is compelled to give effect to the integration clause and conclude the Defense Agreement is a stand-alone document that controls the terms of Liberty's ongoing defense obligations, to the exclusion of the policies and the Settlement Agreement.

Under the terms of the Defense Agreement, Liberty can be discharged from its ongoing defense obligations upon the occurrence of one of the following conditions: (1) the resolution of the Elliott action by settlement, verdict, or judgment; or (2) Liberty's filing of a declaratory action to determine whether Liberty may withdraw from the defense of that action should the plaintiffs there assert a claim for mold damages or amend their complaint to allege damages not covered by the policies. Liberty does not allege the satisfaction of either of these conditions in its amended complaint. Therefore, the court concludes that the pleadings and incorporated materials fail to establish that Liberty has fulfilled its defense obligations under the Defense Agreement.

## III. CONCLUSION

For the foregoing reasons, the court DENIES Liberty's motion for judgment on the pleadings (DE # 39) and GRANTS KB's motion for judgment on the pleadings (DE # 30). It is

hereby declared that Liberty is obligated to continue to defend KB under the terms of the Defense Agreement. Liberty's complaint is DISMISSED. KB's counterclaims one through four remain.

This 28 October 2014.

W. Earl Britt
Senior U.S. District Judge