No. 5:13-CV-831-BR

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| KB HOME, KB HOME RALEIGH-DURHAM, INC., and STOCK BUILDING SUPPLY, LLC, | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Liberty Mutual Fire Insurance Company's ("Liberty")

appeal from the 3 May 2016 order of United States Magistrate Judge Kimberly A. Swank. (DE #

158.) Also before the court is KB Home and KB Home Raleigh-Durham, Inc.'s (collectively

"KB Defendants") motion to strike the response of intervenor Stock Building Supply, LLC

("Stock"). (DE # 161). The motions have been fully briefed and are ripe for disposition.

## I. BACKGROUND

As noted in the prior order of this court, this case arises from the settlement of a lawsuit

involving two commercial general liability insurance policies Liberty issued to KB Home

Raleigh-Durham, Inc.'s subcontractor, Stock, in 2005 and 2006. In December 2008, a group of

North Carolina homeowners filed a lawsuit against KB Defendants in Wake County Superior

Court, North Carolina, alleging that their homes had suffered water damage resulting from

improper home construction, *Mark Elliott, et al. v. KB Home North Carolina, Inc. and KB Home

Raleigh-Durham, Inc.*, Case No. 08-CVS-21190 (the "Elliott action"). (See DE # 158-1.) KB

Defendants subsequently named Stock as a third-party defendant in the action. (See DE # 158-

2.)  Additionally, in November 2010, KB Defendants filed a declaratory judgment action against

Liberty in the same state court, seeking defense as an additional insured under the policies.

(Answer, DE # 26, ¶ 10.)  In February 2012, KB Defendants reached a settlement with Liberty

regarding the declaratory judgment action and Liberty's defense obligations.  (See DE ## 26-1,

26-2.)  Liberty paid the ongoing defense costs incurred by KB Defendants in the Elliott action

until 9 May 2013, when it informed KB Defendants that it was stopping payment because the

policy limits had been exhausted as a result of payment of other claims.  (Answer, DE # 26, ¶¶

36, 62.)

On 14 June 2013, Liberty filed this action seeking a declaration that it had fulfilled its

duty to defend KB Defendants pursuant to the terms of the policies and the parties' settlement

agreement.  (DE # 1.)  KB Defendants filed an answer and asserted five counterclaims against

Liberty: (1) breach of insurance contract; (2) breach of contract; (3) breach of the implied

covenant of good faith and fair dealing; (4) unfair and deceptive trade practices; and (5)

declaratory judgment regarding indemnification under the policies, Liberty's alleged statutory

violations, and Liberty's ongoing defense obligations to KB Defendants.  (DE # 26)  The parties

each moved for judgment on the pleadings with respect to their respective requests for

declaratory relief regarding Liberty's duty to defend KB Defendants in the underlying action.

(DE ## 30, 39.)

On 28 October 2014, the court issued an order granting KB Defendants' motion for

judgment on the pleadings, denying Liberty's motion for judgment on the pleadings, and

dismissing Liberty's complaint.  (DE # 56.)  In the order, the court declared that Liberty is

obligated to continue to defend KB Defendants under the terms of the parties' settlement

agreement.  (Id. at 10.)  Following this declaration, KB Defendants filed a motion for partial

judgment on the pleadings as to its second cause of action for breach of contract, which the court granted on 14 August 2015. (DE # 80.) KB Defendants' remaining counterclaims—the remaining portions of count five, and counts one, three, and four—concern its allegations that Liberty acted in bad faith settling claims made against Stock to the detriment of KB Defendants' status as an additional insured under the policies.

On 23 January 2015, KB Defendants filed a motion to compel discovery in an effort to obtain documents related to Stock's claim file. (DE # 65.) A few days later, on 27 January 2015, Stock filed a motion to intervene in this action for the purpose of protecting its interest in the privileged and confidential information that has been sought from Liberty by KB Defendants. (DE # 70.) Liberty subsequently produced some but not all of the requested materials, asserting the withheld documents were protected by the attorney-client privilege and the work-product doctrine. (DE # 79.) By order dated 4 May 2015, the court granted in part and denied in part KB Defendants' motion to compel, and allowed Stock to intervene "for the limited purpose of protecting its interest in discovery." (DE # 106.)

On 25 January 2016, KB Defendants filed a motion to stay proceedings pending final disposition of the underlying state-court litigation. (DE # 134.) KB Defendants asserted that, without a stay, Liberty's assertions of privilege and protection would preclude KB Defendants from obtaining documents and other material facts and communications central to its claims while the Elliott action is pending. (DE # 135, at 4.) In addition, KB Defendants argued that a stay was necessary "due to the need to first resolve the liability issues in the underlying Elliott Action as well as to quantify the KB Defendants' defense and indemnity damages." (Id. at 9.) Stock filed a response indicating that it did not object to the stay of the matter. (DE # 139.) Liberty, however, objected to the entry of the stay. (DE # 140.)

On 3 May 2016, Judge Swank entered an order granting KB Defendants' motion to stay, and staying this action pending disposition of the Elliott action.  (DE # 157.)  Liberty filed an appeal from that order on 17 May 2016, (DE # 158), to which KB Defendants and Stock each filed responses in opposition, (DE ## 159, 160).  KB Defendants filed a motion to strike Stock's response on 3 June 2016.  (DE # 161.)

## II.  DISCUSSION

### A.  Motion to Strike

The court first addresses KB Defendants' motion to strike Stock's response to the appeal. In support of the motion, KB Defendants argue that Stock was not entitled to file a response because "Stock is not a party, and its interests were not adjudicated in the Order that Liberty is appealing."  (DE # 161, at 1.)  As noted above, Stock was permitted to intervene in this action for the limited purpose of protecting its interest in discovery.  The stay order at issue specifically addresses whether delaying this action to await the outcome of the Elliott action will facilitate the resolution of the parties' discovery dispute over documents and communications relating to Liberty's handling and adjustment of Stock's claims.  Because the instant appeal involves consideration of discovery issues relating to Stock's claim file, the court finds that it falls within the purpose for which Stock was allowed to intervene.  Accordingly, the court will deny the motion to strike and take Stock's response into consideration in evaluating this appeal.

### B.  Motion to Stay

#### 1.  Standard of Review

The Federal Magistrates Act confers authority upon district judges to designate magistrate judges to hear pretrial motions.  28 U.S.C. § 636(b)(1).  When a magistrate judge decides a non-dispositive motion, the district judge may, given a timely appeal, set aside the

order if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A magistrate

judge's ruling involving a stay of proceedings is generally considered a non-dispositive motion

under Rule 72(a). See 28 U.S.C. § 636(b)(1)(A); PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10,

13-14 (1st Cir. 2010) (holding that a motion to stay litigation that "is not dispositive of either the

case or any claim or defense within it" must properly be determined by a magistrate judge).

### 2. Analysis

On appeal, Liberty sets forth the following grounds upon which it contends the stay order

should be modified or set aside: (1) the magistrate judge applied the wrong legal standard in

determining whether to stay this matter; (2) the magistrate judge's conclusion that the documents

withheld by Liberty on grounds of privilege will be produced following resolution of the

underlying state-court action is contrary to law; (3) the magistrate judge failed to consider the

issue of prejudgment interest; and (4) the stay order contains several misstatements of fact that

are not supported by the record. The court will address each of these arguments in turn.

Initially, Liberty challenges the stay of this action, arguing that the magistrate judge

misstated the record and applied the wrong legal standard in deciding the motion to stay. (DE #

158, at 3-4.) Liberty bases this argument on its contention that the stay order misstates the

remaining claims as "KB's counterclaims one through four," and fails to reflect that portions of

KB Defendants' fifth cause of action for declaratory judgment remain to be adjudicated. (Id. at

3.) Liberty appears to suggest that, due to this apparently inadvertent error, the magistrate judge

improperly assessed the motion to stay by balancing the parties' competing interests. (Id. at 3-4.)

According to Liberty, because this action includes a claim for declaratory judgment, the

magistrate judge should have analyzed the motion to stay under the four-factor test established in

<u>Nautilus Insurance Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 375-76 (4th Cir. 1994). (<u>Id.</u> at 4-5.)

There is no dispute that the stay order misstates the claims remaining to be adjudicated in this action. Previously, at the request of the parties, the court entered an order clarifying that the 28 October 2014 order addresses only a portion of KB Defendants' counterclaim for declaratory judgment, and left the remaining portions in count five seeking declaratory judgment regarding Liberty's indemnification obligations and alleged statutory violations intact. (<u>See</u> DE # 76.) Thus, at issue here is whether the magistrate judge's misstatement was relevant to the disposition of the stay order.

The court's authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936). In determining whether to exercise this power, the court "must weigh competing interests and maintain an even balance." <u>Id.</u> at 254-55 (citations omitted); <u>see</u> <u>also</u> <u>United States v. Ga. Pac. Corp.</u>, 562 F.2d 294, 296 (4th Cir. 1977) (per curiam) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket."). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." <u>Williford v. Armstrong World Indus., Inc.</u>, 715 F.2d 124, 127 (4th Cir. 1983).

Within the declaratory judgment context, a district court has broad discretion in deciding whether to entertain an action brought under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. <u>Wilton v. Seven Falls Co.</u>, 515

U.S. 277, 282 (1995); Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942).  When a related proceeding is pending, however, the court must take into account "considerations of federalism, efficiency, and comity" in determining whether to exercise jurisdiction over a declaratory judgment action.  Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (citation and quotation marks omitted).  To assist courts in balancing the state and federal interests, the Fourth Circuit has enumerated four factors—commonly referred to as the Nautilus factors— for district courts to consider in determining whether to stay or dismiss a declaratory judgment action when a parallel proceeding is pending in state court.  United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998) (citing Nautilus, 15 F.3d at 377).

The Nautilus factors that Liberty claims apply in this matter "govern[] a district court's decision to stay or to dismiss a declaratory judgment action at the outset."  Wilton, 515 U.S. at 283 (noting the circuit courts have adopted several abstention factors to guide district courts in deciding whether to exercise jurisdiction at the outset of an insurance coverage case brought under the Declaratory Judgment Act).  Here, the court has already exercised jurisdiction over this action, and has decided on the parties' respective claims for declaratory relief regarding Liberty's duty to defend KB Defendants in the Elliott action.  The motion to stay at issue is based on the theory that the parties might be able to resolve their longstanding discovery dispute on issues central to this action if the underlying state-court action is resolved first.  Thus, unlike other cases where the Nautilus factors have been applied, the current dispute does not center on the usefulness of the declaratory judgment remedy or the adequacy of the federal forum to resolve the remaining claims.  See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419 (4th Cir. 1998); Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 258 (4th Cir. 1996).  Given these

circumstances, the court finds that the magistrate judge did not err in failing to apply the <u>Nautilus</u> factors in this case.

Liberty also contends that, even if the magistrate judge applied the correct legal standard, she did so improperly by presupposing that Liberty's confidentiality concerns will be gone upon resolution of the Elliott action. (DE # 158, at 12.) The court finds that this argument is without merit. In the stay order, the magistrate judge carefully considered Liberty's arguments regarding its rights of confidentiality arising under the attorney-client privilege and work-product doctrine, and recognized that "adjudication of the state-court litigation may not resolve all of the parties' discovery disputes." (DE # 157, at 5.) After balancing the parties' competing interests, the magistrate judge concluded that awaiting the outcome of the state-court litigation would not be unfairly prejudicial to Liberty because there is a strong likelihood that "the interests held by Liberty and Stock in preventing disclosure of settlement discussions and other information contained in Stock's claim file will be significantly diminished upon resolution of the Elliott action." (<u>Id.</u>) This reasoning is bolstered by the record, given that Stock did not oppose the stay and acknowledged that the resolution of the Elliott action may mitigate some of its concerns regarding discovery.

Next, Liberty requests, to the extent the case remains stayed, the court modify the stay order to address the accrual of prejudgment interest during the period of the stay. (DE # 158, at 9-10.) In support, Liberty argues that it would be inequitable for prejudgment interest to continue to accrue during the period of the stay when the delay is due to KB Defendants' request to stay proceedings and Liberty opposed the motion to stay. (<u>Id.</u>) The court finds no reason this issue cannot be addressed at the time the entire matter of prejudgment interest is determined.

Finally, Liberty objects to certain statements in the stay order on the ground that they are unsupported by the record. (Id. at 12-13.) After reviewing Liberty's objections, the court cannot conclude that any of the misstatements identified by Liberty warrant reversal of the stay order. Liberty first claims that the stay order inaccurately reflects a number of facts concerning the underlying state-court litigation. (Id. at 12.) Liberty correctly notes that the stay order misstates that the homeowners in the underlying action sued both KB Defendants and Stock. In fact, Stock was named as a defendant in KB Defendants' third-party complaint. Liberty also objects to the stay order on the ground that it mischaracterizes the parties' arguments in the present action. (Id. at 13.) For example, with respect to Liberty's defense obligations in the underlying action, the stay order notes that "Liberty asserts that the limits of its policies were exhausted in March 2013 and that it therefore has no remaining duty to defend or indemnify the KB Home defendants." (DE # 157, at 3.) Liberty claims that, despite its stated intention to appeal the court's order declaring that Liberty is obligated to continue to defend KB Defendants in the Elliott Action under the terms of the parties' settlement agreement, it accepts and acknowledges that the court has determined that Liberty owes a duty to defend KB Defendants. Although the stay order may mischaracterize Liberty's present position regarding its duty to defend, such an error does not weaken the magistrate judge's conclusion that staying this action will serve the parties' interests in full and complete disclosure of information relevant to their claims and allow for a fair determination of any damages to which they may be entitled.

### III. CONCLUSION

Having reviewed Liberty's contentions regarding the magistrate judge's order, the court concludes that Liberty has not shown that any finding forming the basis of the stay order was clearly erroneous or contrary to law. Accordingly, the 3 May 2016 order of the magistrate judge

granting KB Defendants' motion to stay is AFFIRMED. KB Defendants' motion to strike, (DE # 161), is DENIED. With respect to KB Defendants' motion for partial summary judgment, (DE #144), and motion to seal (DE # 150), the court DENIES these motions without prejudice. The court DIRECTS the clerk to administratively close this case subject to it being reopened upon appropriate motion of any party.

This 22 September 2016.


_____
W. Earl Britt
Senior U.S. District Judge